THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEFFREY C. BLAKE, Defendant-Appellant.

Second District    No. 2—93—0746

Opinion filed September 7, 1994.

William Thomas Freeman, of Freeman, Freeman & Associates, P.C., of Wheaton, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE QUETSCH delivered the opinion of the court:

Following a bench trial in the circuit court of Du Page County at which the State's evidence was presented by way of stipulation, defendant, Jeffrey C. Blake, was convicted of violations of section 401(a)(2)(A) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56¹/₂, par. 1401(a)(2)(A) (now codified, as amended, at 720 ILCS 570/401(a)(2)(A) (West 1992))), section 5(d) of the Cannabis Control Act (Ill. Rev. Stat. 1989, ch. 56¹/₂, par. 705(d) (now 720 ILCS 550/5(d) (West 1992))), and unlawful use of weapons (Ill. Rev. Stat. 1989, ch. 38, par. 24—1(a)(7) (now 720 ILCS 5/24—1(a)(7) (West 1992))). Defendant was sentenced to concurrent terms of imprisonment of six years for the Controlled Substances Act violation, three years for the Cannabis Control Act violation, and three years for unlawful use of weapons. The evidence resulting in defendant's convictions was seized during a search pursuant to a warrant conducted on June 14, 1991. On appeal defendant contends that the trial court erred denying his motion and supplemental motion to quash the warrant and suppress evidence seized during the search.

The record reveals that on June 13, 1991, between 9 and 10 p.m., Agents Robert Guerrieri and William Simmons of the Du Page Metropolitan Enforcement Group (DuMEG) met with Judge C. Andrew Hayton at Judge Hayton's home and presented a written complaint for the issuance of a warrant to search defendant's person and the premises at 29W115 Warrenville Road in Warrenville.

According to the search warrant complaint, on May 28, 1991, a confidential informant told Agent Guerrieri that on several occasions he had observed a white male, 30 to 35 years of age, known to the informant as "J.C.," selling a white powdery substance purported to be cocaine. The sales occurred at J.C.'s home. The informant directed Agent Guerrieri to a single-family dwelling at 29W115 Warrenville Road where, according to the informant, the sales had taken place. The name "Blake" appeared on the mailbox and information maintained by DuMEG indicated that defendant resided at the Warrenville Road address.

Agent Guerrieri conducted a "computer check" of the informant's criminal history which revealed no criminal convictions, although charges of two counts of driving under the influence of alcohol were pending against the informant.

The search warrant complaint recited that after the initial meeting with Agent Guerrieri the informant participated in controlled purchases of cocaine from defendant at the Warrenville Road premises on May 31, June 6, and June 13, 1991. On each occasion, Agent Guerrieri searched the informant and confirmed that he had no controlled substances on his person before the informant entered the premises. Agent Guerrieri furnished the informant with cash to make the purchase and maintained surveillance while the informant entered and subsequently exited the premises. On each occasion, after leaving the premises, the informant produced a white powdery substance and stated that he had purchased the substance, represented to be cocaine, from J.C. with the cash furnished by Agent Guerrieri. The informant was again searched, and neither the money supplied by Agent Guerrieri nor any additional controlled substances were found on his person. Field tests conducted after each controlled purchase indicated the presence of cocaine in the white powdery substance obtained from the Warrenville Road premises. Laboratory tests on the substance obtained during the first controlled purchase also indicated the presence of cocaine. Laboratory tests on the substances obtained during the other two purchases had not been completed at the time the search warrant complaint was prepared.

Judge Hayton reviewed the allegations of the complaint, which was sworn to before him by Agent Guerrieri, and read the warrant

that had been prepared. Judge Hayton told the agents that he believed probable cause had been established and that he would issue the warrant. Judge Hayton signed the complaint for search warrant, attesting that it had been sworn to by Agent Guerrieri. However, Judge Hayton inadvertently failed to sign the warrant itself and failed to indicate on the warrant the date and time of its issuance.

The next morning, a search of the Warrenville Road premises was conducted and various items of contraband were discovered. Prior to the search, defendant was observed leaving the premises and he was detained while the search proceeded. While preparing an inventory of the items discovered during the search, Agent Guerrieri noticed for the first time that Judge Hayton had failed to sign the search warrant. Agent Guerrieri also noticed the blank spaces on the warrant for the time and date of issuance. At first, Agent Guerrieri thought the spaces for time and date referred to the execution of the warrant, so he filled in that information. When he realized his mistake, he crossed out what he had written. Agent Guerrieri also printed Judge Hayton's name on the warrant.

Agent Guerrieri testified that he showed defendant a copy of the warrant at the Warrenville police station but did not leave it with defendant at that time. Agent Guerrieri then took the warrant to Judge Hayton and pointed out the omission of the time and date and his signature. Judge Hayton signed the warrant and filled in the time and date of issuance as 9:15 p.m. on June 13. Agent Guerrieri subsequently furnished a copy of the warrant to defendant.

Defendant filed a motion to quash the warrant and suppress evidence seized from his residence on the basis that false information had been deliberately or recklessly set forth in the search warrant complaint. Defendant noted that a police report indicated that the alleged May 31, 1991, controlled purchase took place between 6:17 p.m. and 6:24 p.m. With his motion, defendant submitted the affidavits of Charles Edwards and Cathleen Edwards stating that defendant was visiting Ms. Edwards in the hospital at that time. The trial court denied the motion without conducting an evidentiary hearing, because, after setting aside the allegedly false statements, the remaining content of the complaint would be sufficient to establish probable cause. Defendant subsequently filed a supplemental motion to quash based on the omission of the time and date of issuance and the issuing judge's signature on the warrant. The trial court concluded that the omissions were technical defects which did not vitiate the authority to conduct the search.

We first consider defendant's argument that the search warrant was invalid because at the time of the execution of the warrant it

had not yet been signed by the judge who issued it, and the date and time of its issuance were omitted. Section 108—4 of the Code of Criminal Procedure of 1963 (Code) provides, in pertinent part, that "[a]ll warrants shall state the time and date of issuance and be the warrants of the judge issuing the same and not the warrants of the court in which he is then sitting and such warrants need not bear the seal of the court or clerk thereof." (Ill. Rev. Stat. 1989, ch. 38, par. 108—4 (now codified, as amended, at 725 ILCS 5/108—4 (West 1992)).) Section 108—14 of the Code provides that "[n]o warrant shall be quashed nor evidence suppressed because of technical irregularities not affecting the substantial rights of the accused." Ill. Rev. Stat. 1989, ch. 38, par. 108—14 (now 725 ILCS 5/108—14 (West 1992)).

Relying on *People v. Taylor* (1990), 198 Ill. App. 3d 667, defendant contends that the omissions from the warrant were not mere technical errors. In *Taylor*, the State's Attorney and a police officer prepared a complaint for a search warrant. The State's Attorney contacted a judge by telephone and read the complaint to him. The judge authorized the State's Attorney to have the complaint sworn to before him as a public official and to issue the search warrant. The next day, after a search had been conducted, the judge signed the warrant. The trial court found the warrant invalid for the failure to state the time and date of issuance and the failure to be the warrant of the judge and not the court. The Appellate Court, Third District, affirmed. Defendant relies on the following passage from the court's opinion:

> "Although the Illinois statute does not expressly require the signature of the judge on the warrant, it does require the time and date of issuance, and it further requires that any warrant be the warrant of the issuing judge. We do not agree that the time, date, and judicial signature are 'ministerial acts' or mere technicalities that can be omitted without invalidating the search warrant. *** Citizens should not be expected to accept such an incomplete document as authority for the police to search their homes and seize their possessions." *Taylor*, 198 Ill. App. 3d at 669-70.

However, the court did not base its decision on that reasoning alone. It appears the critical factor influencing the court's decision was the failure to comply with the requirements that the warrant be issued upon a written complaint under oath or affirmation. The court noted that no record was made of the telephone conversation, no "grave exigency" was established, and there was no way the issuing judge could ascertain whether the complaint was actually in writing and under oath. (198 Ill. App. 3d at 670.) The court concluded that

"the telephonic conversation as reported in the record was not a proper means of exercising judicial authority to issue a search warrant pursuant to the statute," and the court "decline[d] to read into the search warrant statute authorization for long distance factual findings by telephone and for oral issuance of a warrant without the date, time, or judge's signature." (198 Ill. App. 3d at 670.) We believe the holding in *Taylor* is appropriately limited to factually similar situations where a warrant has been issued orally by telephone. In the case at bar, a written complaint under oath was presented to the issuing judge in person, and *Taylor* does not apply. To the extent that *Taylor* might be read as categorically holding that even the inadvertent omission of the time, date, and judge's signature from a search warrant necessarily invalidates the warrant, we decline to follow such a holding.

We note that in other cases courts have held that the omission of the time and date from the face of the warrant is not always fatal. (See *People v. Vanlandingham* (1991), 223 Ill. App. 3d 362, 375; *People v. Lozada* (1977), 55 Ill. App. 3d 366, 368.) The apparent purposes of the requirement that the search warrant show the time and date of its issuance are to permit officers executing the warrant to determine whether it has expired due to the passage of time (725 ILCS 5/108—6 (West 1992)) and to document the time of issuance for purposes of judicial review. In *People v. Vanlandingham* (1991), 223 Ill. App. 3d 362, which the State has cited, it was held that the omission of the time and date of issuance did not invalidate a warrant where it could be determined that the warrant was executed within the requisite time period. The *Vanlandingham* court stated that the purpose of the exclusionary rule would not be served by suppressing the evidence seized pursuant to the warrant since "the warrant was not stale and there was no police misconduct." (223 Ill. App. 3d at 376.) In *People v. Lozada* (1977), 55 Ill. App. 3d 366, where the date of issuance did not appear on the face of the search warrant, the trial court refused to consider evidence proffered by the State establishing the date of issuance and granted the defendant's motion to quash. The Appellate Court, First District, reversed. Citing section 108—14 of the Code, the court found that "the omission on the face of the warrant was a technical irregularity not affecting defendant's substantial rights" and that "[t]he trial court unnecessarily restricted the scope of the hearing by refusing to consider testimony which cured the technical error." 55 Ill. App. 3d at 368.

■ We find the reasoning of *Vanlandingham* and *Lozada* persuasive. Although Judge Hayton inadvertently omitted the date and time from the warrant when it was issued, he promptly corrected

the error, thereby supplying a reliable basis for review of the timeliness of the search conducted pursuant to the warrant. Moreover, the warrant was executed by the same officer who secured its issuance the previous evening and thus knew that it was not stale. Since the record shows that the warrant was not stale when the search was conducted, the technical error provides no basis for quashing the warrant.

While we are aware of no case dealing with the issuing judge's failure to sign the original search warrant prior to its execution, in *People v. Harrison* (1967), 83 Ill. App. 2d 90, 95, it was held that the absence of the judge's signature and the date of issuance on the copy of the warrant provided to the defendant was a technical irregularity which did not affect substantial rights. As noted above, in commenting on the significance of the omission of the time, date, and issuing court's signature, the *Taylor* court stated that "[c]itizens should not be expected to accept such an incomplete document as authority for the police to search their homes and seize their possessions." (*Taylor*, 198 Ill. App. 3d at 670.) We note, however, that while Illinois law requires that a copy of the warrant be provided to persons from whom articles are seized (725 ILCS 5/108—6 (West 1992)), there is apparently no general constitutional requirement that a search warrant be presented to the person whose premises are to be searched (see 2 W. LaFave, Search & Seizure § 4.12(a), at 358-59 (2d ed. 1987)). Thus the *Taylor* court's concern is not of constitutional dimension. While we certainly do not mean to disparage the statutory safeguards relating to the conduct of searches, we are not prepared to say that the inadvertent failure to present a facially complete search warrant at the time of the search *necessarily* affects substantial rights so as to invalidate the search, and we cannot find that substantial rights were affected in this case.

Accordingly, under the circumstances of this case, we conclude that the inadvertent omissions of the time, date, and issuing judge's signature were technical irregularities which did not affect substantial rights. Pursuant to section 108—14 of the Code, these omissions provide no basis for quashing the warrant or suppressing the evidence.

Defendant next argues that the trial court erred in denying his motion to quash the search warrant and suppress evidence without conducting an evidentiary hearing pursuant to *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674. Prior to *Franks*, in Illinois a defendant was prohibited from impeaching the veracity of the sworn statement in support of a search warrant. (See *People v. Lucente* (1987), 116 Ill. 2d 133, 146; *People v. Torres* (1990), 200 Ill.

App. 3d 253, 260.) However, in *Franks*, "the Supreme Court announced a limited exception to this ban, stating that, while there is a presumption of validity with respect to an affidavit supporting a search warrant, where a defendant makes a substantial preliminary showing that an affiant, knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant's affidavit, defendant is entitled to a hearing *if the false statement is integral to the probable cause determination.*" (Emphasis added.) (*Torres*, 200 Ill. App. 3d at 260, citing *Franks*, 438 U.S. at 155-56, 57 L. Ed. 2d at 672, 98 S. Ct. at 2676.) On the other hand, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." 438 U.S. at 171-72, 57 L. Ed. 2d at 682, 98 S. Ct. at 2684.

As discussed above, in the sworn complaint for the search warrant, Agent Guerrieri detailed three controlled purchases of cocaine made by an informant under Agent Guerrieri's surveillance. On each occasion, the informant told Agent Guerrieri that an individual known to him as "J.C." (defendant's first and middle initials) sold him a white powdery substance which was shown by a field test to contain cocaine. The informant had previously provided Agent Guerrieri with a general description of J.C. which matched a description of defendant found in records maintained by DuMEG. In support of his motion to quash and suppress, defendant supplied affidavits stating that, at the time of the first controlled purchase described in the search warrant complaint, defendant was visiting a friend at the hospital.

Defendant contends that the affidavits constituted a substantial preliminary showing of false statements made knowingly and intentionally or with reckless disregard for the truth within the meaning of *Franks*. In *Franks*, the Court was careful to explain that "[t]he deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." (438 U.S. at 171, 57 L. Ed. 2d at 682, 98 S. Ct. at 2684.) However, in *People v. Lucente* (1987), 116 Ill. 2d 133, while our supreme court acknowledged that the defendant's *ultimate* burden under *Franks* is to show that the *affiant* made deliberate or reckless false statements, the court held that in proper cases the defendant may be entitled to an evidentiary hearing if he supplies evidence contradicting hearsay statements in the search warrant affidavit attributed to a confidential informant.

In *Lucente*, the defendant offered an "alibi," supported by affidavits, to a confidential informant's account of a drug transaction

in which the defendant had allegedly participated. The State argued that evidence refuting the informant's hearsay account of the drug transaction did not justify a *Franks* hearing because the defendant's showing did not "negate the possibility that the informant, rather than the [affiant] officer, might have been the source of the misstatements." (116 Ill. 2d at 148.) The *Lucente* court rejected any blanket rule that such an alibi-type showing could never be sufficient to justify an evidentiary hearing, but also made clear that such a showing would not automatically require an evidentiary hearing. (116 Ill. 2d at 152.) Rather, "[t]he determination in a given case must be based upon a careful balancing of the statements in the warrant affidavit versus those in support of the defendant's challenge to the warrant." 116 Ill. 2d at 152.

Defendant contends that the trial court ignored the principles of *Lucente* and erroneously denied his request for a *Franks* hearing on the basis that his "alibi" for the first controlled purchase only impeached the informant, not Agent Guerrieri. It is true that the trial court commented in passing that defendant's showing was directed against the veracity of the informant, not the affiant; the court did not mention the *Lucente* balancing approach to determining whether an alibi-type showing is sufficient to justify an evidentiary hearing. However, the sufficiency of defendant's preliminary showing was not the primary reason underlying the trial court's decision. Rather, the court refused to conduct a *Franks* hearing principally because it concluded that even without the allegedly false statements the search warrant complaint was sufficient to establish probable cause. As noted above, no evidentiary hearing is required under *Franks* "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause." (*Franks*, 438 U.S. at 171-72, 57 L. Ed. 2d at 682, 98 S. Ct. at 2684; see also 2 W. LaFave, Search & Seizure § 4.4c, at 197 n.48 (2d ed. 1987) (and cases cited therein); accord *People v. Edwards* (1991), 144 Ill. 2d 108, 132; *People v. Torres* (1990), 200 Ill. App. 3d 253, 264.) As explained below, we agree with the trial court that even without the challenged hearsay in the search warrant complaint the complaint was sufficient to establish probable cause, and thus defendant was not entitled to an evidentiary hearing. Accordingly, it is unnecessary to consider whether defendant's "alibi" was a sufficient preliminary showing pursuant to the principles of *Franks* and *Lucente*.

■ The search warrant complaint contains Agent Guerrieri's sworn statement that he conducted surveillance during three controlled purchases by a confidential informant at defendant's resi-

dence. The informant was furnished cash to purchase cocaine and was searched to confirm that he had no controlled substances on his person when he entered the residence. On each occasion, the informant returned from the premises without the cash and with a substance which, according to field tests, contained cocaine. The informant stated that an individual fitting defendant's general description and having the same first and middle initials as defendant sold the informant the substance. Defendant asserted an alibi for the first transaction. But even if the hearsay statements attributed to the informant that implicate defendant in the first transaction are disregarded, the remaining content of the search warrant complaint was more than sufficient to establish probable cause that a controlled substance would be found at defendant's residence.

Defendant contends that the search warrant complaint does not sufficiently demonstrate that the informant was reliable in accordance with "totality-of-the-circumstances" approach set forth in *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, and adopted by our supreme court in *People v. Tisler* (1984), 103 Ill. 2d 226, 245, as the standard applicable under the Illinois Constitution. According to *Gates*:

"The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for...conclud[ing]' that probable cause existed." (462 U.S. at 238-39, 76 L. Ed. 2d at 548, 103 S. Ct. at 2332.)

Defendant points out that the prior reliability of the informant has not been shown and notes that Class A misdemeanor charges (driving under the influence of alcohol) were pending against the informant.

■ The informant's pending misdemeanor charges do not persuade us that the informant was unreliable. As a matter of necessity, police investigating illegal drug activity often must turn to individuals within the criminal milieu for information. The informant here did not have any prior convictions, and we do not think the misdemeanor charges seriously undermine the informant's reliability.

It is true that the informant's reliability was not established on the basis of a "track record" in prior investigations. (See generally 1 W. LaFave, Search & Seizure § 3.3(b) (2d ed. 1987).) However, the controlled purchase procedure used in this case was sufficient to establish the informant's reliability. As our supreme court has observed:

"[I]t has been recognized that 'corroboration will suffice to show veracity [where] the informant has not been working independently, but rather has cooperated closely with the police, as is true when the informant makes a controlled purchase of narcotics.' (1 W. LaFave, Search and Seizure sec. 3.3, at 559 (1978); see also *State v. Gamage* (Me. 1975), 340 A.2d 1; *State v. Barrett* (1974), 132 Vt. 369, 320 A.2d 621.) This close police surveillance in controlled purchases of drugs serves to minimize the risk of falsehood and reduce reliance on the informant's credibility." *People v. Exline* (1983), 98 Ill. 2d 150, 154-55.

Accord *People v. Canet* (1991), 218 Ill. App. 3d 855, 865-66; *People v. Morrison* (1988), 178 Ill. App. 3d 76, 83; see also 1 W. LaFave, Search & Seizure § 3.3(f), at 686 n.317 (2d ed. 1987) (and cases cited therein).

Because controlled purchases were conducted, much of the information relied on to establish probable cause was based on Agent Guerrieri's personal observations rather than mere anecdotal information supplied by the informant. On three occasions Agent Guerrieri personally observed the informant enter defendant's residence without cocaine and emerge from the residence with a substance shown by field tests to contain cocaine. Thus, Agent Guerrieri's personal observations were sufficient to show that, more probably than not, cocaine would be found on the premises. See *Exline*, 98 Ill. 2d at 154.

■ Defendant points out that the warrant not only authorized a search of the premises where the controlled purchases took place, but also authorized the search of his person. However, it is unnecessary to consider whether the search warrant complaint established probable cause to search defendant's person since the contraband upon which defendant's convictions are based was seized from his residence, not from his person. "[P]artial invalidity of a search warrant is not fatal to the validity of the whole warrant." (*People v. Velez* (1990), 204 Ill. App. 3d 318, 329; see also *People v. McCoy* (1985), 135 Ill. App. 3d 1059, 1067.) Thus, even if the portion of the warrant authorizing a search of defendant's person was not supported by probable cause (a matter about which we express no opinion), the warrant would still be valid with respect to defendant's residence.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and DOYLE, JJ., concur.