# Illinois Official Reports

## Appellate Court

***People v. Monroy-Jaimes*, 2019 IL App (2d) 160426**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FERNANDO MONROY-JAIMES, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-16-0426 |
| Rule 23 order filed<br>Motion to<br>publish allowed<br>Opinion filed | November 16, 2018<br><br>January 11, 2019<br>January 11, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 13-CF-1912; the Hon. John J. Kinsella, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Thomas A. Lilien, and Timothy J. Storm, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Steven J. Lupa, Assistant State's Attorneys, of counsel), for the People. |

Panel                    JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice Birkett and Justice Zenoff concurred in the judgment and opinion.

## OPINION

¶ 1        The defendant, Fernando Monroy-Jaimes, appeals from an order of the circuit court of Du Page County denying his motion to quash and suppress. The defendant contends that the police did not have probable cause to arrest him and that evidence seized from his vehicle and statements made to the police following his improper arrest should have been suppressed. Because the defendant's arrest was supported by probable cause, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3        The defendant was indicted on one count of unlawful possession with intent to deliver 15 grams or more but less than 100 grams of cocaine (720 ILCS 570/401(a)(2)(A) (West 2012)). The defendant filed a motion to quash his arrest and suppress physical evidence and statements obtained following his arrest.

¶ 4        The following evidence was established at the hearing on the motion to quash and suppress. Douglas Sanborn testified that he was a police officer with the Bensenville Police Department, assigned to the Du Page Metropolitan Enforcement Group (DuMEG) and working in undercover narcotics investigations. As part of his investigations, he had participated in and witnessed hundreds of drug transactions. In about 50 of those investigations, he used information provided by individuals in police custody.

¶ 5        On September 16, 2013, Officer Sanborn was working with an individual who was in custody for having possessed drugs with the intent to deliver. This confidential informant identified a person named "Chilango," who was later identified as the defendant, as someone who could provide cocaine. At about 4 p.m., at Officer Sanborn's direction, the informant placed a phone call to Chilango. Officer Sanborn was able to hear both sides of the conversation. Although the conversation was in Spanish, Officer Sanborn testified that he spoke fluent Spanish. The informant asked Chilango for five ounces of cocaine. Chilango stated that he could provide only two ounces right away or five ounces later. A short time later, the informant called Chilango again and stated that he could wait to get five ounces. They also discussed meeting at a BP gas station at 149 East Ogden Avenue in Hinsdale to conduct the drug sale. Chilango stated that he would call when he had the cocaine.

¶ 6        Officer Sanborn testified that he then met with other officers involved in the investigation to go over the phone conversation and make surveillance plans. Later, Officer Sanborn directed the informant to call Chilango again. Officer Sanborn again heard both sides of the conversation. Chilango told the informant that he was waiting to get the cocaine but that they could meet at the gas station in about an hour. About a half-hour later, Chilango called the informant, and Officer Sanborn overheard him say that he was on the way to the gas station. At about 7 p.m., the informant received another call from Chilango, who asked for directions to the gas station. Chilango called again for more directions a few minutes later.

¶ 7    Shortly after 7 p.m., the informant and Officer Sanborn were parked with a view of the gas station. The informant told Officer Sanborn that he saw Chilango arriving at the gas station in a Toyota Rav 4. Officer Sanborn observed the defendant pull into the gas station and park at a gas pump. Officer Sanborn identified the defendant in court as the person he saw in the vehicle at the gas station. The defendant had not committed any traffic violations when he pulled into the gas station. Officer Sanborn believed that the defendant was bringing cocaine to the gas station. After parking, the defendant exited his vehicle and went into the gas station. The informant received another call from Chilango at about 7:10 p.m. Chilango stated that he was at the gas station. At that point, Officer Sanborn alerted surveillance officers, who went into the station and placed the defendant in custody. Officer Sanborn then had the informant call Chilango's phone number, and one of the surveillance officers answered the defendant's phone. The defendant was transported to the police station. At the police station, Officer Sanborn overheard the defendant talking and recognized the defendant's voice as the voice of Chilango.

¶ 8    Andrew Anselm testified that he was a sergeant with the Illinois State Police and was on assignment to the North Central Narcotics Task Force. Before that, he was assigned to DuMEG. In that capacity, on September 16, 2013, Officer Sanborn had informed him about the phone conversations between the informant and Chilango. Thereafter, Sergeant Anselm and other surveillance officers went to the BP gas station at 149 East Ogden Avenue in Hinsdale and parked by the gas station building. Sergeant Anselm was in communication with Officer Sanborn during this time.

¶ 9    At about 7 p.m., Sergeant Anselm saw a silver Toyota Rav 4 pull into the gas station and park. Officer Sanborn told Sergeant Anselm that the informant had identified the driver of the Rav 4 as Chilango. Sergeant Anselm saw the defendant park his vehicle at a pump and walk into the gas station. Sergeant Anselm then gave a signal, and he and other surveillance officers placed the defendant in custody. The defendant was searched at the time of his arrest but the officers did not find any contraband on the defendant's person. Officer Sanborn had the informant call Chilango's phone. After that, the defendant's cell phone began to ring. Sergeant Anselm answered the phone and spoke to Officer Sanborn. About 30 seconds later, Sergeant Anselm walked to the defendant's vehicle, where he saw a clear plastic bag, containing a white chalky substance, on the front passenger seat. Based on his training and experience, Sergeant Anselm knew that it was cocaine, so he opened the door and confiscated it.

¶ 10    Following argument, the trial court found that the defendant was placed under arrest inside the gas station. The trial court further found that there was probable cause to arrest the defendant because the police knew of the specific agreement between the informant and the defendant for the delivery of five ounces of cocaine at a specific location. Thus, when the defendant arrived at the prearranged location, there was probable cause to arrest him. After the arrest, Sergeant Anselm found the cocaine in plain view in the defendant's vehicle, which was parked 20 to 30 feet away. The trial court acknowledged that a mere arrest does not authorize a search of any property at any location. However, the vehicle was close by and the cocaine was in plain view. The trial court found that this was no different than if the defendant had been arrested standing outside his vehicle. The trial court found that the cocaine was lawfully seized from the defendant's vehicle. The trial court thus denied the defendant's motion to quash and suppress. The trial court also denied the defendant's motion to reconsider.

¶ 11      The case proceeded to a bench trial. At trial, Officer Sanborn and Sergeant Anselm testified consistently with their testimony at the suppression hearing. The parties stipulated that the substance retrieved from the defendant's vehicle tested positive for 67.191 grams of cocaine. Detective Vicente Roman testified that he interviewed the defendant at the police station following his arrest. The defendant told Detective Roman that he agreed to sell the cocaine to the informant because he was unemployed and needed to make some money. In a written statement, the defendant indicated that he "[w]as grabbed trying to give reduced drugs for money but [he] was unable to do it because the police recognized [him] and took [him] into the police station *** [he] was going to profit $750." Following the bench trial, the trial court found the defendant guilty of possession with intent to deliver a controlled substance. The trial court denied the defendant's motion for a new trial or for an acquittal. The trial court sentenced the defendant to six years' imprisonment. The defendant filed a timely notice of appeal.

¶ 12                                    II. ANALYSIS

¶ 13      On appeal, the defendant argues that the trial court erred in denying his motion to quash and suppress. The defendant argues that the police did not have probable cause to arrest him. The defendant further argues that, because his arrest was not valid, the evidence seized from his vehicle and the subsequent statements to the police should have been suppressed.

¶ 14      In reviewing a ruling on a motion to quash and suppress, we apply a two-part standard. *People v. Hopkins*, 235 Ill. 2d 453, 471 (2009). Although we accord great deference to the factual findings, and will reverse only if they are against the manifest weight of the evidence, we review *de novo* the ultimate ruling. *Id.* A warrantless arrest is valid only if supported by probable cause. *Id.* at 472. Probable cause to arrest exists when the facts known to the police when they make the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime. *Id.* The existence of probable cause depends upon the totality of the circumstances at the time of the arrest. *Id.*

¶ 15      In addressing probable cause, we deal with probabilities. *Id.* They are the factual and practical considerations of everyday life on which reasonable and prudent people, not legal technicians, act. *Id.* Accordingly, whether probable cause exists depends upon commonsense considerations, and such a determination concerns the probability of criminal activity, rather than proof beyond a reasonable doubt. *Id.* Indeed, probable cause does not require even a showing that the belief that the suspect had committed a crime was more likely true than false. *Id.*

¶ 16      If the facts supplied in an informant's tip are essential to a finding of probable cause, the tip must be reliable. *People v. Johnson*, 368 Ill. App. 3d 1073, 1081 (2006). An indication of the reliability of the tip is when the facts learned through police investigation independently verify a substantial part of the tip. *Id.* (citing *People v. James*, 118 Ill. 2d 214, 225 (1987)). The reliability of the informant is another fact to be considered. *Id.* (citing *People v. Adams*, 131 Ill. 2d 387, 397 (1989)). The reliability of the informant is enhanced if he is known to the police. See *United States v. Davis*, 617 F.2d 677, 693 (D.C. Cir. 1979) (a person who knows that the police are in a position to charge him with a crime will not lightly undertake to divert " 'the police down blind alleys' "). However, if an informant is offered leniency in exchange for information that incriminates others, such information is clearly suspect. *James*, 118 Ill. 2d at 224. Whether an informant has provided reliable information depends on the totality of the

circumstances. *People v. Tisler*, 103 Ill. 2d 226, 245-46 (1984) (citing *Illinois v. Gates*, 462 U.S. 213, 239 (1983)).

¶ 17    In the present case, the informant's reliability was established under the totality of the circumstances. The informant provided the tip in person while in police custody. This enhanced the reliability of the tip. *Davis*, 617 F.2d at 693. A confidential informant is deemed more reliable than an anonymous informant. *People v. Bryant*, 389 Ill. App. 3d 500, 518-19 (2009); see also *People v. Sanders*, 2013 IL App (1st) 102696, ¶ 19 (recognizing the "difference between an anonymous tip and one from a known informant whose reputation can be ascertained and who can be held accountable if a tip turns out to be fabricated"). Further, there was no evidence that the informant was given any specific inducement or promise in exchange for providing the information about the defendant and cooperating with the police.

¶ 18    In addition, the informant's reliability was enhanced by the fact that much of the information relied upon to establish probable cause was based on Officer Sanborn's personal observations during the phone calls between the informant and the defendant. *People v. Blake*, 266 Ill. App. 3d 232, 242 (1994) (noting that an informant's reliability was enhanced because "much of the information relied on to establish probable cause was based on [the police officer's] personal observations rather than mere anecdotal information supplied by the informant"). Officer Sanborn listened in on all of the phone calls between the informant and the defendant. Officer Sanborn thus heard the informant's request for a purchase of cocaine and the defendant's statement that he could provide two ounces immediately or five ounces later. When the informant indicated that he could wait for the five ounces, Officer Sanborn heard the informant and the defendant set a location for the drug transaction. Within the expected period of time, the defendant indicated that he was on his way, and he was identified at the prearranged location by the informant. Shortly after that, the defendant called the informant to tell him that he had just arrived at the gas station. Accordingly, much of the information provided by the informant was verified before the defendant's arrest. Under the totality of the circumstances, the police were aware of facts "sufficient to lead a reasonably cautious person to believe that the [defendant] ha[d] committed a crime." (Internal quotation marks omitted.) *Hopkins*, 235 Ill. 2d at 472.

¶ 19    The defendant argues that the informant was unreliable because there was no evidence that he had provided reliable information in the past. However, the lack of any such evidence does not change our conclusion. Prior reliable tips are simply one consideration in the totality of the circumstances as to whether the informant was reliable.

¶ 20    The defendant cites *People v. Chavez*, 327 Ill. App. 3d 18 (2001), and *People v. Halmon*, 225 Ill. App. 3d 259 (1992), for the proposition that a lack of history of providing reliable information renders an informant unreliable. Those cases are distinguishable from the present case. Although in those cases the informants' track records of providing information were critical to establishing the informants' reliability or lack of it, those cases did not involve an arranged purchase of narcotics of which the police had first-hand knowledge. *Chavez*, 327 Ill. App. 3d at 23 (confidential informant provided specific information as to future drug transaction, and surveillance officers observed the predicted drug transaction; informant held reliable based on track record of providing reliable information); *Halmon*, 225 Ill. App. 3d at 274, 276 (anonymous informant unreliable because there was no evidence as to informant's background, criminal history, or whether he supplied reliable information in the past; police had no corroborating information to render the tip reliable). In this case, unlike in *Chavez*,

Officer Sanborn listened as the informant and the defendant set up a specific drug transaction, and, unlike in *Halmon*, the informant was not anonymous and much of the information was corroborated prior to the defendant's arrest. As there were other factors supporting the informant's reliability, a track record of supplying reliable information was not critical.

¶ 21    The defendant also argues that the informant was unreliable because he did not know the defendant's real name. In support, the defendant cites *People v. Crespo*, 207 Ill. App. 3d 947, 949 (1991) (upholding trial court's grant of a motion to suppress, noting that the informant knew the subject only as "John"). However, the defendant's reliance on *Crespo* is unpersuasive. In that case, the informant was not found unreliable because he did not know the perpetrator's last name. Rather, the informant's reliability was weakened by the fact that he was supplying information in exchange for lessened punishment and because he was uncertain of whether the events observed by the police were actually the drug transaction that he was predicting or something different. In this case, there was no such uncertainty. The informant and the defendant reached a very specific agreement for the delivery of five ounces of cocaine, and the defendant arrived at the prearranged location. Further, there was no evidence that the informant was receiving any lessened punishment.

¶ 22    The defendant also argues that the police lacked probable cause because, in the later phone calls, the defendant did not specifically state that he would have cocaine with him when he arrived at the gas station. However, a finding of probable cause is not based on each of the phone calls viewed in isolation. Rather, it is based on the totality of the circumstances. As noted, the informant and the defendant reached a very specific agreement for the delivery of five ounces of cocaine. In dealing with probable cause, "we deal with probabilities," not certainties. (Internal quotation marks omitted.) *Hopkins*, 235 Ill. 2d at 472. Here, based on all the circumstances, there was a fair probability that the defendant had brought cocaine to the gas station. This is all that was necessary to establish probable cause. *Id.*

¶ 23    Because we have concluded that the defendant's arrest was supported by probable cause, we need not reach the defendant's additional contentions on appeal, which are predicated on his argument that his arrest was improper.

¶ 24                                    III. CONCLUSION

¶ 25    For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed. As part of our judgment, we grant the State's request that the defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 26    Affirmed.