2021 IL App (1st) 181665

THIRD DIVISION
April 21, 2021

No. 1-18-1665

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 10423 |
| | ) | |
| RONNIE LANCE, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Ellis and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial, the trial court found defendant Ronnie Lance guilty of four counts

of possession of a controlled substance (720 ILCS 570/402(a)(1)(A), (c) (West 2016)) and five

counts of unlawful use of weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2016)) and

sentenced him to concurrent 54-month and 3-year prison terms. Defendant appeals, contending the

trial court erred by denying his motion to suppress evidence where the search warrant was invalid

on its face and, because all of the evidence on which the State relied at trial was obtained pursuant

to that search warrant, his conviction should be reversed. We affirm.

¶ 2    On June 8, 2016, Chicago police executed a search warrant at the first-floor apartment at

1415 North Laramie Avenue and recovered various items of contraband, as well as proof of

residency indicating that defendant lived in the apartment. Thereafter, the State charged defendant by indictment with four counts of possession of a controlled substance with intent to deliver, five counts of UUWF, and two counts of possession of a firearm without a valid firearm owner's identification (FOID) card (430 ILCS 65/2(a)(1) (West 2016)).

¶ 3    Prior to trial, defendant filed a motion to "quash arrest and suppress evidence," in which he sought to suppress "any and all physical evidence" recovered from his "person, vehicle, vicinity, or any other source," as well as the "statement[s], utterances, and/or responses" made by him that were the result of the arrest. Defendant stated that he was arrested and items were recovered pursuant to a search warrant that "lacked the sufficient particularity that the law requires." Specifically, defendant pointed out that the search warrant described the subject as " 'Woo,' an unknown male Black, 40-45 years of age, 5'05"-5'09", 175lbs-200lbs[ ], dark complexion, [m]edium build, black hair worn short, brown eyes," and argued that the description "could describe thousands of African-American males within the city of Chicago." Defendant asserted that the search warrant allowed the officers great discretion in determining whom to search and provided no safeguard against the officers searching the wrong person by mistake. Therefore, defendant maintained, the warrant violated the fourth amendment, which requires a warrant to describe the person to be searched with sufficient particularity so as to leave the executing officer no doubt or discretion about whom to search. Further, he argued he did not fit the description contained in the warrant, other than that he was a black male and that the officers merely "arrest[ed] the first black male they found in the residence, and charged him with [possession of] the contraband recovered."

¶ 4        At the hearing on defendant's motion, the trial court framed the motion as a motion to quash the warrant. Prior to hearing the parties' arguments, the court reviewed the warrant, which authorized Chicago police to search " 'Woo,' " as described above, and the premises described as "[t]he entire first floor apartment of a two story red brick building located at 1415 N. Laramie Ave., Chicago, Illinois Cook County."[1] The warrant also authorized officers to seize "[h]eroin and any evidence showing proof of residency, any paraphernalia used in the weighing, cutting or mixing of illegal drugs[,] [a]ny money, [and] any records detailing illegal drug transactions."

¶ 5        Defendant argued the warrant was invalid on its face because it failed to describe the "target" with sufficient particularity and operated as a general warrant, in contravention of the fourth amendment. The State argued the warrant was sufficiently specific with respect to the location to be searched and noted the evidence was recovered from the location, not defendant's person. The trial court denied the motion, finding the warrant was not invalid on its face.

¶ 6        Defendant filed a motion to reconsider, in which he reiterated the arguments made in his motion to suppress. The trial court denied the motion, stating as follows:

"I see a warrant that was signed by a judge that has probable cause within the four corners. They're talking about a place to be searched. That's the place to search. What happens once they get inside, if they have a target that may have some similarity, but not total similarity, they don't name [defendant] by name. It's a nickname of 'Woo' with some other demographics about height, age, complexion and weight and build and hair and eyes. I'm not sure it's totally inconsistent with what I'm looking at in front of me when I see [defendant]; but even if it's not, I don't think it matters.

---

[1]The warrant was not admitted into evidence.

***

Because they had a warrant to go in the apartment.

***

And once they go in the apartment, then the investigation takes another step."

¶ 7     The matter proceeded to a bench trial. Officer Matthew Diblich testified that, on June 8, 2016, he and a team of officers executed the search warrant at the first-floor apartment of 1415 North Laramie in Chicago. When he entered the apartment, he saw defendant seated in the front room next to "a child or younger person" and two or three additional men in the kitchen area, all of whom appeared to be within the same age range as defendant. Next to defendant on the couch was a box, which contained clear plastic bags of suspected cannabis and defendant's Cook County jail identification (ID) card on which were his name and photograph. Officer Diblich recovered the box next to defendant, at which time defendant stated, without being asked any questions, "That's mine. I'll take my weight."

¶ 8     Defendant was placed in custody and moved toward the center of the apartment, away from the living room. Officer Diblich read defendant his *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), and after acknowledging he understood his rights, defendant gestured toward the middle bedroom and stated, "All that s*** in that room is mine. These people ain't got nothin' to do with it."

¶ 9     The officers searched the bedroom. Officer Diblich found a box in the bedroom from which he recovered six tinfoil packets, encased in tape and containing suspected heroin. He also recovered a 9-millimeter handgun that was loaded with eight live rounds from the pocket of a sweater that was hanging off the closet door. In addition, Officer Diblich recovered a plastic bag

in the closet, which contained numerous letters, including gas and cable bills, addressed to "Ronnie Lance" at 1415 North Laramie, a loaded magazine for a handgun, and a box of .22-caliber bullets. Another officer, Officer Galligan, recovered a rifle, as well as bundles of suspected heroin packaged for "street level sale."

¶ 10    After the search was completed, Officer Diblich informed defendant he would be taken to the police station for processing. Defendant asked Officer Diblich to retrieve a pair of shoes from the room in which the heroin and guns were recovered.

¶ 11    Officer Michael Galligan testified that he was part of the team that executed the warrant. When the officers made entry, they knew the nickname of the "target" and his physical description, but they did not know the target's identity. Officer Galligan entered the apartment and saw defendant and several other adult men.

¶ 12    Defendant was detained and taken to a hallway near the front room. After defendant was advised of his *Miranda* rights, he stated, "all that s*** in there is mine," and he nodded toward the middle bedroom. He also told the officers the other men present had "nothing to do with it."

¶ 13    In the bedroom closet, Officer Galligan found a black plastic bag, inside of which were four clear, knotted plastic bags. Inside the clear plastic bags were 60 tinfoil packets containing suspected heroin. He also found a .22-caliber rifle and a box of .22-caliber rifle ammunition. No contraband was recovered from defendant's person.

¶ 14    Officer Paolino, who also participated in executing the warrant, testified that he recovered photographs of defendant from "the mantle area" of the living room.[2] While inside the apartment, Officer Paolino did not hear defendant make any statements.

---

[2]Officer Paolino's first name is not identified in the record.

¶ 15    Officer John Thornton testified that he was the "entry officer" and, when he entered the apartment, he saw a digital scale in the front room in "the fireplace area." He alerted Officer Diblich to the presence of the scale, and Officer Diblich recovered it.

¶ 16    Jorge Gomez, an expert in forensic chemistry, testified that he examined and tested 49 of the tinfoil packets recovered by Officer Galligan, which contained a combined 15.5 grams of heroin and fentanyl. In addition, he examined and tested four of the tinfoil packets recovered by Officer Diblich, which contained a combined 1.2 grams of heroin and fentanyl. The State rested.

¶ 17    Defendant's father, Ronnie Lance Sr., who at the time of trial was in the custody of the Illinois Department of Corrections for possession of heroin, testified that he was present when the officers executed the warrant.[3] According to Lance Sr., 10 or 15 officers were involved in executing the warrant. Lance Sr. did not hear defendant say anything to the officers before defendant was taken out of the apartment. Rather, one of the officers said, "[w]e found your drugs," to which defendant replied, "I don't have no drugs." The officers never asked Lance Sr. for his name.

¶ 18    Nashon Johnson testified that he was present at 1415 North Laramie getting his haircut in the kitchen when the police executed the search warrant. Also present were defendant, defendant's son, Lance Sr., and a barber. Except for the barber, who was Latino, everyone in the apartment was an adult, African-American man. The police took Johnson, Lance Sr., and the barber out to the back porch. The officers asked for Johnson's ID card but did not ask if he had a nickname.

¶ 19    Defendant, who had a 2011 conviction for possession of a controlled substance, testified that he, his son, Lance Sr., Johnson, and the barber were present when the police executed the

---

[3]To avoid confusion, we refer to defendant's father as Lance Sr.

search warrant. When the police entered the apartment, defendant was seated on the couch in the front room, and next to him was a "can" containing marijuana and his ID card.

¶ 20    The police placed defendant in handcuffs but did not ask his name, ask if he had a nickname, or read him his *Miranda* warnings. Defendant did not tell the police there were drugs or guns in the apartment, and he did not motion to the bedroom and say "all that s*** was [his]," because the police never asked. Had the police asked him, defendant would have told them he did not know what was in the apartment. Defendant did not make any statements while he was being transported to the police station. Defendant had never been known by the nickname "Woo."

¶ 21    On cross-examination, defendant testified the box containing the marijuana and his ID card was not on the couch next to him when the police entered but was in the front room. Defendant testified he did not live in the apartment. He maintained that testimony when he was confronted with the photographs of him recovered from the mantle, as well as the mail bearing the name "Ronnie Lance" and the address of the apartment.

¶ 22    The trial court found defendant guilty of four counts of possession of a controlled substance, as a lesser-included offense of possession of a controlled substance with intent to deliver, and five counts of UUWF but found him not guilty of possession of a firearm without a valid FOID card. Defendant filed a posttrial motion, which asserted, in pertinent part, that the court should have granted his motion to suppress evidence because the warrant was not specific enough to pass fourth amendment scrutiny. The trial court denied the motion.

¶ 23    The trial court thereafter sentenced defendant to concurrent prison terms of 54 months' and 3 years' imprisonment.[4] Defendant filed a motion to reconsider his sentence, which the trial court denied. This appeal followed.

¶ 24    On appeal, defendant argues that the trial court should have granted his motion to suppress evidence because the search warrant was invalid on its face where it failed to describe its target with sufficient particularity. Because all of the evidence on which the State relied at trial was obtained pursuant to the search warrant, defendant maintains that we should reverse his conviction outright.

¶ 25    The State initially argues that defendant forfeited his challenge to the validity of the search warrant by failing to file a motion to quash the warrant and instead filing a motion to suppress evidence. Defendant responds that his motion to suppress asserted the search warrant was invalid and, therefore, he did not forfeit review of this claim. We agree with defendant.

¶ 26    Here, the record clearly shows that the validity of the warrant was placed at issue in defendant's motion to suppress. Further, at the hearing on the motion, the trial court specifically

---

[4]We note there is a discrepancy in the record with respect to the trial court's sentencing order. The court found defendant guilty of nine separate offenses, specifically, four counts of possession of a controlled substance and five counts of UUWF. In imposing defendant's sentence, the trial court stated, "On the Class 1 to Class 2 counts, defendant gets 54 months in the penitentiary. As to the Class 4 counts, three years in the penitentiary, everything runs concurrent." The mittimus shows defendant was sentenced to terms of 54 months' imprisonment for each of his five UUWF convictions and two terms of 34 months' imprisonment for two Class 4 possession of a controlled substance convictions, all of which were to be served concurrently. In addition, the record contains a "criminal disposition sheet," which shows defendant was sentenced to concurrent terms of (1) 54 months' imprisonment on counts I and II, which were a Class 1 and Class 4 possession of a controlled substance conviction, respectively; (2) 3 years' imprisonment on counts III and IV, which were Class 4 possession of a controlled substance convictions; and (3) 54 months' imprisonment on counts V, VI, and VII, which were Class 2 UUWF convictions. The mittimus and the "criminal disposition sheet" are incongruent with each other and with the court's findings of guilt on nine counts of the indictment. Though neither party addresses this discrepancy, we note the court's oral pronouncement of sentence controls over the written sentencing order. *People v. Carlisle*, 2015 IL App (1st) 131144, ¶ 87.

framed the issue as a challenge to the validity of the warrant, and defendant's arguments in support of the motion focused on that issue. Accordingly, we conclude that defendant did not forfeit review of his claim on appeal, and we will review it on the merits.

¶ 27    When reviewing a trial court's ruling on a motion to suppress, reviewing courts generally apply a bifurcated standard of review, under which the trial court's findings of fact are reviewed only for clear error, and its ultimate legal ruling as to whether suppression is warranted is reviewed *de novo*. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). Additionally, we may rely on the evidence presented at trial to the extent it supports affirming the trial court's judgment. *People v. Butorac*, 2013 IL App (2d) 110953, ¶ 14 (citing *People v. Brooks*, 187 Ill. 2d 91, 127-28 (1999)).

¶ 28    The fourth amendment states, in pertinent part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. Likewise, article I, section 6, of the Illinois Constitution of 1970 states, "[n]o warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized." Ill. Const. 1970, art. I, § 6; see also 725 ILCS 5/108-7 (West 2016) (requiring the place or person to be searched and the items to be seized to be "particularly described in the warrant"). A valid search warrant must particularly describe the place or person to be searched and the things to be seized. 725 ILCS 5/108-3(a) (West 2016) (a search warrant may issue upon oath or affirmation of "facts sufficient to show probable cause and which particularly describes the place or person, or both, to be searched and the things to be seized"); see also *People v. McCarty*, 223 Ill. 2d 109, 149 (2006) ("A search warrant's description is sufficient if it enables the officer executing the warrant, with reasonable effort, to identify the place to be searched."). "The purpose

of this requirement is to prevent the use of general warrants that would give police broad discretion to search and seize." *People v. Burmeister*, 313 Ill. App. 3d 152, 158 (2000).

¶ 29    Defendant claims that the search warrant in this case was invalid on its face because it describes the person to be searched only as " 'Woo,' an unknown male Black, 40-45 years of age, 5'05"-5'09", 175lbs-200lbs[ ], dark complexion, [m]edium build, black hair worn short, brown eyes." Defendant contends that this description is so "generic [and] broad" that it "operated as a general warrant," leaving officers with " 'doubt or discretion as to the person or premises to be searched.' " See *People v. Mabry*, 304 Ill. App. 3d 61, 64 (1999).

¶ 30    Whether a search warrant is sufficiently particular depends on the facts and surrounding circumstances. *People v. Simmons*, 210 Ill. App. 3d 692, 697 (1991). A search warrant for a person must describe the person to be searched in such manner as to leave the executing officer no doubt or discretion about whom to search. *Id.*

¶ 31    Defendant has provided no authority to support a claim that a search warrant identifying an unknown suspect by a nickname and description is akin to a general warrant or inherently invalid, nor does he claim that the description in the warrant was inconsistent with his appearance, denying only that he was known by the nickname "Woo." Although it appears that no Illinois court has specifically considered whether a search warrant that uses a subject's nickname or alias and description is sufficiently particular, our courts have determined that search warrants without any name at all, or that only include a suspect's first name, may be valid if the warrant includes other facts such as a physical description and a location where the person may be found. *Id.* Moreover, many other states have found search warrants describing a subject by a nickname to be sufficiently particular. See *Thrall v. State*, 177 S.E.2d 192 (Ga. Ct. App. 1970) (a warrant giving the alias of a

person to be searched sufficiently described the person, even without a physical description); *Webster v. State*, 250 A.2d 279 (Md. Ct. Spec. App. 1969) (holding that a description of a person in a search warrant using his alias, "Candy," was sufficient); *State v. Siirila*, 193 N.W.2d 467 (Minn. 1971) (a search warrant describing the defendant by giving his alias name and listing his physical characteristics was sufficient); see also *Clark v. State*, 527 So. 2d 161 (Ala. Crim. App. 1987) (concluding that a warrant that identified its target only by a nickname did not identify the person to be searched with "reasonable certainty" but noting that use of an alias, together with other facts such as a physical description and location, would have sufficed); *United States v. Perez*, 629 F. App'x 699, 704 (6th Cir. 2015) (search warrant containing both the defendant's alias and a physical description of him satisfied the fourth amendment particularity requirement).

¶ 32    Here, the search warrant at issue includes a nickname, a physical description of the subject who was to be searched, and the premises at which the subject may be found, which would appear to comport with Illinois precedent as well as guidance from other jurisdictions. Nonetheless, we need not determine whether the warrant described the subject with sufficient particularity, or whether it was defendant who was the subject of the warrant. There is no evidence in the record that defendant was searched pursuant to the search warrant, and no evidence was recovered from defendant's person. See *People v. Blake*, 266 Ill. App. 3d 232, 242 (1994) ("[I]t is unnecessary to consider whether the search warrant complaint established probable cause to search defendant's person since the contraband upon which defendant's convictions are based was seized from his residence, not from his person.").

¶ 33    Instead, the record indicates that the officers had an independent justification for arresting defendant, apart from the warrant itself. The evidence showed that, in executing the search warrant

for the first-floor apartment at 1415 North Laramie Avenue, no evidence was recovered from defendant's person. Instead, upon entering the residence, officers observed defendant sitting next to a box containing clear plastic bags of suspected cannabis and defendant's ID card. Without being asked any questions, defendant took responsibility for the box and its contents, stating, "That's mine. I'll take my weight." At that point, defendant was placed in custody, was read his *Miranda* rights, and acknowledged his understanding of them. Defendant then told officers that everything in the middle bedroom was his, further stating that the other individuals present "ain't got nothin' to do with it." The circumstances that arose during the execution of the search warrant—including defendant's proximity to, and statements taking responsibility for, the recovered contraband—provided probable cause to arrest defendant, regardless of whether he was the subject of the search warrant or whether the warrant described him with sufficient particularity. See *People v. Pittman*, 216 Ill. App. 3d 598, 603 (1991).

¶ 34    In *Pittman*, the Appellate Court, Fourth District, considered the State's appeal of an order granting defendant's motion to suppress evidence. The evidence in that case established that, in executing a search warrant at a Danville residence, officers saw eight people, including the defendant, who had not been named in the search warrant, in the living room and also observed marijuana and other drug paraphernalia in plain view on a nearby coffee table. The officers handcuffed and searched all the individuals and recovered a bottle containing cocaine from defendant's pocket. The trial court granted the defendant's motion to suppress evidence; however the appellate court reversed, finding that the police had probable cause to believe that the defendant constructively possessed the cannabis based on his close proximity to where it was recovered and therefore the police had probable cause to arrest defendant and search him incident to that arrest.

¶ 35    Similarly in this case, defendant was observed by officers executing a search warrant in close proximity to a box containing suspected cannabis. Additionally, defendant here explicitly took responsibility for that contraband, and his ID card was found inside the box. Although the record does not even indicate that defendant was searched in this case, the *Pittman* court explained that the officers were authorized to arrest defendant at that point, and search him incident to that arrest, regardless of whether he was named in the warrant.

¶ 36    Moreover, even if we were to accept defendant's suggestion and find a defect in the search warrant, the partial invalidity of a search warrant is not fatal to the validity of the whole warrant. *People v. McCarty*, 356 Ill. App. 3d 552, 562 (2005), *aff'd*, 223 Ill. 2d 109 (2006). In *Blake*, 266 Ill. App. 3d at 242, the court considered the defendant's challenge to the validity of a search warrant based on the defendant's claims that the issuing judge failed to sign it and omitted the date and time of issuance and that allegedly false information was deliberately or recklessly set forth in the search warrant complaint. The appellate court, however, concluded that the omissions from the face of the warrant were technical defects that did not invalidate the search and, even absent the allegedly false statements, the search warrant complaint established probable cause to search the premises.

¶ 37    Although the defendant in *Blake* argued that the warrant authorized not only a search of the premises but also the defendant's person, the appellate court found it

> "unnecessary to consider whether the search warrant complaint established probable cause to search defendant's person since the contraband upon which defendant's convictions are based was seized from his residence, not from his person. *** [E]ven if the portion of the warrant authorizing a search of defendant's

person was not supported by probable cause (a matter about which we express no opinion), the warrant would still be valid with respect to defendant's residence." *Id.*

¶ 38    Similarly here, the record establishes that the contraband upon which defendant's convictions are based was not recovered from his person but rather from inside a bedroom of the apartment searched by the police. Notably, defendant does not argue the warrant failed to describe the place to be searched with sufficient particularity. Therefore, even if the warrant was invalid with respect to the person to be searched, the warrant was still valid with respect to the place to be searched. *Id.* Because the contraband upon which defendant's convictions are based was found in the residence and not on his person, we conclude the trial court properly denied defendant's motion to suppress.

¶ 39    Defendant relies on *Simmons*, 210 Ill. App. 3d 692, which is distinguishable on several bases. In *Simmons*, the State appealed from an order suppressing evidence against the defendant, who had been charged with possession of cocaine, pursuant to a search warrant for a residence in Waukegan. The warrant described the subject as " 'an unidentified male black, approximately 5 feet 8 inches, 180 lbs with brown hair and brown eyes, medium complexion and approximately 22 years of age.' " *Id.* at 694.

¶ 40    In executing the search warrant at the residence, officers encountered three black males, one of whom was the defendant, and all three men were searched by the officers. The officers recovered a packet of cocaine from the defendant's pocket. One officer admitted in his testimony that he did not know whom he was supposed to search, and the court found it "clear from the record that the officers were not concerned with determining which of them might be the person described in the warrant because the officers did not ask any questions and searched all three men."

*Id.* at 699. The appellate court further noted that there was no evidence that the defendant resided at the apartment, that there was no contraband in plain view, and that the defendant "did not act in a suspicious manner or make any furtive gestures." *Id.* at 700. Accordingly, the court found that the officers did not have independent probable cause to search the defendant's person.

¶ 41　Here, by contrast, the officers had a basis independent of the search warrant to arrest defendant. When the police entered the residence, they observed defendant in constructive possession of cannabis, which defendant acknowledged was his. Shortly thereafter, the officers recovered proof of defendant's residency at the apartment, including photographs and mail, and defendant took responsibility for more contraband found in a bedroom. Importantly, the contraband for which the defendant in *Simmons* was ultimately convicted was recovered from the defendant's person, whereas in this case, the contraband was recovered from the premises identified in the search warrant.

¶ 42　For the foregoing reasons, we conclude that defendant's motion to suppress was properly denied and affirm the judgment of the circuit court of Cook County.

¶ 43　Affirmed.

---

**No. 1-18-1665**

---

| | |
|---|---|
| **Cite as:** | *People v. Lance*, 2021 IL App (1st) 181665 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-CR-10423; the Hon. James B. Linn, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Kelly Anne Burden, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Matthew Connors, and Iris G. Ferosie, Assistant State's Attorneys, of counsel), for the People. |

---