THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
DARRELL SIMMONS, Defendant-Appellee.

Second District   No. 2—89—0491

Opinion filed March 20, 1991.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Kim M. DeWitt, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE DUNN delivered the opinion of the court:

The State appeals from an order of the circuit court suppressing the evidence against defendant, Darrell Simmons. Defendant was charged with possession of a substance containing less than 15 grams

of cocaine (Ill. Rev. Stat. 1989, ch. 56½, par. 1402(b)). He filed a motion to suppress the evidence, which was denied. After a stipulated bench trial, the court found defendant guilty of the offense. Defendant filed a motion for a new trial and to reconsider the motion to suppress. The court granted those motions, and the State filed this appeal pursuant to Supreme Court Rule 604(a)(1) (134 Ill. 2d R. 604(a)(1)). The State raises one issue on appeal: whether a police officer, executing a search warrant authorizing the search of a building and of an unidentified person, could search defendant, who was present on the scene and who had some of the characteristics of the person described in the warrant.

In the motion to suppress, defendant alleged that the search of his person was unlawful because defendant had no connection to the residence searched; he was not named in the search warrant; and he was not observed in the commission of a crime nor did the police have probable cause to believe that he had committed a crime. The search warrant authorized the search of "an unidentified male black, approximately 5 feet 8 inches, 180 lbs with brown hair and brown eyes, medium complexion and approximately 22 years of age" and of the residence located at 520 Eighth Street, in Waukegan. The warrant authorized the seizure of cocaine, drug paraphernalia associated with the use and sale of cocaine, and evidence of occupancy or ownership of the premises. In the complaint for the search warrant, the affiant, Officer Michael Bettasso, stated that an informant had made two controlled purchases of cocaine from the subject of the warrant, at 520 Eighth Street. The informant told Bettasso about the purchases and also told Bettasso that on one occasion the informant observed a room to the right of the staircase on the landing. The subject told the informant that this room was the "Smoker room," where those who purchased cocaine could ingest it by "Freebasing" or inhaling it. The informant observed several people inside the "Smoker room" inhaling what he believed was cocaine.

At the hearing, Officer John Angelos, of the Waukegan police department, testified that on March 14, 1989, at 5:30 a.m. he went to 520 Eighth Street in Waukegan to execute a search warrant. Angelos was accompanied by Lieutenant Burleson and Officers Henriquez, Bettasso, and Bartlett. Angelos and his partner entered the bedroom off of the stairway. There were three black males in the room. Two were seated on the bed, and the other person was sitting on a chair next to the closet. Defendant was one of the men. The officers told the men to put their hands on their heads and to lie facedown on the floor. All three complied. Angelos then had defendant stand up. Ange-

los patted him down and then went through defendant's pockets, where he found a packet of cocaine. Angelos further testified that when the officers first entered the room, the men did not make any move to destroy or conceal evidence, nor did they make any threatening gestures. The officers did not question defendant before they searched him. Angelos admitted that he did not know whom he was supposed to search. Angelos stated that, in addition to the packet of cocaine that he found in defendant's pocket, the officers recovered a handgun from the bedroom and a large quantity of drugs from the basement.

On cross-examination, Angelos stated that defendant fit the description of the unidentified person described in the warrant. However, when Angelos entered the room, he did not know which one of the three men was the person described in the warrant. Angelos further stated that he found drug paraphernalia ("copper scouring powder, scrubbers, burning materials to heat up these items, baking soda for cutting purposes, and *** used *** pony packs") on the floor, the desk and the television in the bedroom. Although the loaded handgun found in the bedroom was "not in direct view," it was within five to six feet of defendant. Angelos had each of the three men get up, one by one, and patted them down for weapons. Angelos admitted that he searched defendant's pocket because he believed that it contained contraband since defendant was in the "Smoker room." During the search, Angelos did not "pay any attention to" defendant's height and later estimated that defendant's height was 5 feet 11 inches.

Defendant testified that on March 15, 1989, he was between 6 feet and 6 feet 1 inch tall and he was living in Bellwood, Illinois. Defendant was 23 years old. Defendant admitted that he weighed 175 pounds and had a "[m]edium complexion."

After hearing the arguments of counsel, the court noted that people frequented the residence at 520 Eighth Street to buy drugs and that the room where defendant was found was used to consume drugs. It was not clear to the court whether the gun was concealed. The court stated that it appeared that only one officer was in the room and there was a gun in the room; thus, the search of the men was justified as a protective search. The court also noted that there was a two- to four-inch discrepancy in the height, but that all the other characteristics of the person described in the warrant fit defendant: "180 pounds, brown hair[,] brown eyes, medium complexion, approximately twenty-two years of age." Consequently, the court denied the motion.

Following the stipulated bench trial, wherein the court found defendant guilty of the offense, defendant filed a motion for a new trial or to reconsider the ruling on the motion to suppress. At the hearing on that motion, the court admitted that it made some unwarranted assumptions on which it based its prior ruling. The court emphasized that there was no evidence that the gun was in plain view, nor was there evidence of any pat downs that may have resulted in finding a gun, because the officer reached into defendant's pocket, rather than just patting him down to determine whether he had a concealed weapon. There was also no evidence of the physical characteristics of the two other men in the room. The court also erroneously assumed that Angelos was the only police officer in the room. The court indicated that it based its prior ruling on the probable cause to arrest defendant for unlawful use of weapons. The court rejected the State's argument that the search of defendant was lawful as pursuant to a search warrant, stating, "[i]f there were some evidence the other two did not fit that description," the State would be correct. Defense counsel argued that the State could not rely on the warrant because it was overly broad. The court then granted the original motion to suppress.

On appeal, the State contends that the search of defendant was valid for two reasons: (1) defendant fit the description in the warrant of the person to be searched; and (2) the officers had probable cause to believe that defendant was concealing contraband.

■ In this appeal, the State must overcome the presumption in favor of the suppression order because a trial court's decision to suppress evidence will not be overturned on review unless that decision is clearly erroneous. (*People v. Galvin* (1989), 127 Ill. 2d 153, 162.) Although the defendant has the burden of proof to make a *prima facie* showing that the police obtained the evidence illegally, once he satisfies that burden, the burden of proof then shifts to the State to show that the search was legal. *People v. Kolody* (1990), 200 Ill. App. 3d 130, 134.

■ The State argues that the search of defendant was proper because he substantially fit the warrant description of the person to be searched. The fourth amendment to the United States Constitution "prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.' The manifest purpose of this particularity requirement was to prevent general searches." (*Maryland v. Garrison* (1987), 480 U.S. 79, 84, 94 L. Ed. 2d 72, 80, 107 S. Ct. 1013, 1016.) The Code of Criminal Procedure of 1963 also requires that the person to be searched

must be described with particularity. (See Ill. Rev. Stat. 1989, ch. 38, pars. 108—3, 108—7.) The State, without citation to authority, asserts that the warrant was not vague or uncertain because it described the physical characteristics of the intended subject of the warrant.

■ The warrant authorized the search of an "unidentified" person. This is a "John Doe" type warrant. Generally, "John Doe" warrants have been held illegal, unless the warrant somehow names the person or describes him sufficiently. (*West v. Cabell* (1894), 153 U.S. 78, 85, 38 L. Ed. 643, 644-45, 14 S. Ct. 752, 753; see also *United States v. Doe* (3d Cir. 1983), 703 F.2d 745, 747.) To determine the warrant's validity, courts must decide how much information must be supplied by it. *Doe*, 703 F.2d at 748.

■ A search warrant that does not have any name or with only a first name may be valid if, on its face, the warrant includes other facts such as a physical description and a location where the person may be found. (2 W. LaFave, Search & Seizure §4.5(e), at 228-29 (2d ed. 1987).) A search warrant for a person must describe the person to be searched in such manner as to leave the executing officer no doubt or discretion about whom to search. (*People v. Staes* (1968), 92 Ill. App. 2d 156, 160; *Clark v. State* (Ala. Crim. App. 1987), 527 So. 2d 161, 162.) Whether a search warrant is sufficiently particular depends on the facts and surrounding circumstances. *People v. Dorris* (1982), 110 Ill. App. 3d 660, 664.

In *United States v. Ferrone* (3d Cir. 1971), 438 F.2d 381, 389, the court upheld a warrant that authorized the search of " 'John Doe, a white male with black wavy hair and stocky build observed using the telephone in Apartment 4-C, 1806 Patricia Lane, East McKeesport, Pennsylvania.' " A similar warrant was upheld in *United States v. Espinosa* (9th Cir. 1987), 827 F.2d 604. The warrant authorized a search of a hotel room into which the defendant had moved, an apartment on Sepulveda, and two automobiles, a BMW and a Honda. The warrant also authorized the search of a "male Latin, approximately 35 years of age, 5 feet 8 inches/5 feet 10 inches, approximately 200 pounds with black hair and black full beard." (*Espinosa*, 827 F.2d at 607.) The officers had been watching the defendant for about two weeks; they saw him driving a grey BMW and a Honda; and they saw him go into an apartment on Sepulveda.

The warrant in *State v. Malave* (1974), 127 N.J. Super. 151, 316 A.2d 706, also did not contain the name of the person to be searched. There, the search warrant authorized the search of "the premises of 851 Madison Ave 3rd floor and all parts connected thereto. Plus a Puerto Rican male in his forties about 5 feet 6 in height[,] medium

build who lives at said address." (*Malave,* 127 N.J. Super. at 153, 316 A.2d at 707.) While the court recognized that "the description of defendant in the warrant would fit a large number of people in Paterson, New Jersey," the particularity of the warrant was "enhanced by the fact that the affiant in support of" the search warrant participated in its execution. (*Malave,* 127 N.J. Super. at 154, 316 A.2d at 708.) This principle is based on the theory that the chance for mistake is greatly decreased because the officer executing the warrant already knows whom he is supposed to search. *Malave,* 127 N.J. Super. at 155, 316 A.2d at 708.

■ The search warrant in the present case authorized the search of premises and an unidentified person. The description of the person is more limited than it first appears. Since most blacks have dark hair and dark eyes, the warrant only describes the person as a young black male, 5 feet 8 inches in height and weighing 180 pounds. This type of description is similar to those in *Espinosa* and *Ferrone* and is exactly the same as that in *Malave;* it would fit a large number of people in Waukegan. The crucial difference between those cases and the present case is that here the affiant, Officer Bettasso, did not know the person described in the search warrant. In the other cases, the officers had seen the subject of the warrant and knew whom they were supposed to search.

Since the officers here did not have personal knowledge of the identity of the subject of the warrant, they had great discretion in determining whom to search, and there was nothing to diminish the possibility that the officers would search the wrong person by mistake. Without recognition of the subject of the search warrant, the warrant in this case operated as a general warrant, which is forbidden under the fourth amendment. See *Malave,* 127 N.J. Super. at 154, 316 A.2d at 708; see also *People v. Nieves* (1975), 36 N.Y.2d 396, 400-01, 369 N.Y.S.2d 50, 56-57.

Even if the warrant were valid, the search of defendant was beyond the scope of the warrant. The warrant authorized the search of a medium height, heavyset or muscular man who was the occupant of the premises. Defendant is tall and of average build and was not a resident of the premises. The State complains that it would not be practical for officers to carry a tape measure and scale to determine whether a person fits the warrant's description. The State has missed the point: the officers could have, and later did, determine the approximate height of defendant. The height and weight description in the warrant described the build of the person to be searched. Common experience should have told the officers that a person who is 5

feet 8 inches in height and who weighs 180 pounds is heavyset or muscular. Although there is no evidence in the record to establish the build or height of the other two men in the room, it is clear from the record that the officers were not concerned with determining which of them might be the person described in the warrant because the officers did not ask any questions and searched all three men. Thus, we agree with the trial court's conclusion that the officers did not search defendant in the mistaken belief that he was the person described in the warrant.

■■ The State next argues that even if the search of defendant cannot be based on the warrant, the search was a permissible warrantless search based on probable cause. Section 108—9 of the Code of Criminal Procedure of 1963 governs the detention and search of persons on the premises during the execution of a search warrant. Section 108—9 provides that a police officer "may reasonably detain to search any person" on the premises only "[t]o protect himself from attack," or "[t]o prevent the disposal or concealment of any instruments, articles or things particularly described in the warrant." Ill. Rev. Stat. 1989, ch. 38, par. 108—9.

■■ Warrantless searches are *per se* unreasonable. (*Payton v. New York* (1980), 445 U.S. 573, 586, 63 L. Ed. 2d 639, 651, 100 S. Ct. 1371, 1380.) When a warrantless search is challenged, the burden of going forward with evidence to demonstrate the legal justification for a search shifts to the State once the defendant has presented evidence showing that he was doing nothing unusual at the time of the search. (*People v. Broge* (1987), 159 Ill. App. 3d 127, 140; see also *People v. Bohan* (1987), 158 Ill. App. 3d 811, 820.) The record shows that the police officers searched defendant without a warrant, and he was sitting in a room with two other people, doing nothing unusual. Thus, the State was required to prove that the search of defendant was reasonable. The trial court concluded that the State failed to sustain its burden.

■■ It is well established that a person may not be searched during the execution of a search warrant merely because that person happens to be present on the premises. (*Ybarra v. Illinois* (1979), 444 U.S. 85, 90-91, 62 L. Ed. 2d 238, 245, 100 S. Ct. 338, 341-42.) There must be a sufficient connection between the person searched and the premises (*People v. Gutierrez* (1985), 109 Ill. 2d 59, 62), or independent probable cause to search a person on the premises (*Ybarra*, 444 U.S. at 91, 62 L. Ed. 2d at 245, 100 S. Ct. at 342). According to the State, the officers had probable cause to search defendant because he was in the "Smoker room" and there were numerous items of drug

paraphernalia scattered about the room. In addition, it was alleged in the complaint for the search warrant that the premises were used for the purchase and consumption of cocaine.

Defendant was not an occupant of the premises; therefore, the State was required to show some independent probable cause to search him. Because *"Ybarra* does not condition a person's expectation of privacy on the type of premises being searched," the requirement of probable cause to search applies to private residences as well as public places. *(People v. Gross* (1984), 124 Ill. App. 3d 1036, 1039.) The court in *Gross* found that the police did not have probable cause to search the defendant, a social guest who was present during the execution of a search warrant, even though the premises were the site of suspected drug trafficking and the search revealed an "array of drugs" throughout the house. *Gross*, 124 Ill. App. 3d at 1039.

We agree with defendant that this case is similar to *Gross*. The State did not present any evidence to show that defendant was not a social guest on the premises. The State failed to establish a sufficient nexus between defendant and the premises, yet the State seeks to bootstrap the nature of the room and the objects found in it to amount to probable cause to search defendant. If, in fact, the room was a "Smoker room," one would expect there to be paraphernalia in it. That does not necessarily mandate the conclusion that defendant engaged in the smoking or ingesting of cocaine in that room. The State presented no evidence that the room was used exclusively for the consumption of cocaine. The record shows that the room had a bed, a desk, a dresser, a television and at least one chair. The argument, that because defendant was present in that room there was probable cause to search him, falls afoul of the holding of *Ybarra*. The probable cause "requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search *** the premises where the person may happen to be." *Ybarra*, 444 U.S. at 91, 62 L. Ed. 2d at 245, 100 S. Ct. at 342.

Therefore, the State needed to show that there was independent probable cause to search defendant. We conclude that the evidence does not support a finding of probable cause. There was no contraband in open view. Defendant cooperated with the police officers and did not act in a suspicious manner or make any furtive gestures. (See *Gross*, 124 Ill. App. 3d at 1039; *cf. People v. Redmiles* (1989), 191 Ill. App. 3d 198, 201-02 (there was probable cause to search the defendant based on his flight when he saw the police officers approach the house).) In addition, the State failed to present any evidence to show that the paraphernalia had been used recently. (See 2 W. LaFave,

Search & Seizure §3.6(b), at 42 (2d ed. 1987) ("even the observation of [paraphernalia] would not establish probable cause for a search, at least in the absence of other evidence tending to show its recent use").) Thus, the belief that defendant possessed cocaine was a mere hunch or suspicion, which is insufficient to establish probable cause to search him. (See *Terry v. Ohio* (1968), 392 U.S. 1, 22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880.) We therefore conclude that the trial court's decision to grant the motion to suppress was not against the manifest weight of the evidence.

The judgment of the circuit court is affirmed.

Affirmed.

WOODWARD and UNVERZAGT, JJ., concur.