THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RICARDO SPANN, Defendant-Appellee.

Second District   No. 2—91—0685

Opinion filed December 8, 1992.

Gary V. Johnson, State's Attorney, of Geneva, and Michael B. Levy, of Chicago (William L. Browers and John X. Breslin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

George W. Chabalewski, Public Defender, of Geneva, and G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, and Anne S. Quincy, both of Elgin, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The State appeals the order of the circuit court granting the motion of defendant, Ricardo Spann, to quash his arrest. The issues on appeal are whether the police had grounds to stop and frisk defendant and whether the police had probable cause to believe a bag concealed in defendant's pocket contained contraband.

A grand jury indicted defendant for the possession of a controlled substance (Ill. Rev. Stat. 1989, ch. 56½, par. 1402(b)). On October 9, 1990, detective sergeant Mark Brictson of the Elgin police department obtained a warrant to search the apartment of Haywood Hughes at 602 Raymond Street in Elgin. Brictson had been in the apartment four times, had participated in two controlled drug purchases there, had watched the location periodically in September 1990, and had obtained information from a confidential informant. Brictson saw people enter the apartment and leave a couple minutes later; this traffic is typical of drug sales. He also had information that guns were in the apartment. The warrant made no reference to defendant, and Brictson had never seen him there. On the evening of October 9, Brictson and five other officers executed the warrant. One of the officers was from the Bureau of Alcohol, Tobacco and Firearms. Brictson testified that, when raiding narcotics operations, drug dealers use weapons to protect the premises and the police will often recover weapons.

Detective Philip Danner also executed the warrant. When the officers arrived outside Hughes' apartment, they did not see Hughes' car. They saw a different man drive to the location, park, knock on the apartment door, and enter the apartment when someone opened the door. Two minutes later, the officers saw Hughes' car arrive, but he was not in it. The officers then entered the apartment. Brictson knocked on the door and announced "police" as he opened the door. Hughes and the man who previously arrived, whom Danner then recognized as defendant, were walking toward the door. Danner said, "Hello," and defendant said, "Oh, shit." He was looking around the apartment nervously, but he was not moving his hands or feet. Danner testified he was concerned with his safety. Danner knew that defendant had pending charges concerning the possession of cocaine and that he had an extensive criminal history, which included arrests for weapons charges. Danner ordered him to stand against the wall and frisked him.

Danner felt a bulge in defendant's right front pocket. The bulge was smaller than an egg or about an inch wide. Danner squeezed it

through defendant's denim, and the bulge felt as if it had a powdery consistency. It did not appear to be a weapon. Danner thought that the bulge possibly contained cocaine. He pulled the bag from defendant's pocket and saw a white, powdery substance in the bag. At the hearing, Danner stated he had seen and felt cocaine a hundred times, but he did not answer defendant's question whether he had any training in distinguishing the feel of various substances. He knew cocaine felt powdery and crystalline. Danner had no definite information that defendant had cocaine prior to the removal of the bag from his pocket.

The trial court entered written findings in which it stated that the stop and frisk of defendant were proper but that the police officers failed to articulate a basis for suspecting defendant had a weapon or a basis for a more intrusive search grounded upon the feeling of something that did not appear to be a weapon. The trial court granted defendant's motion to suppress evidence, and the State appeals.

The State argues that the officers had justifiable reasons to frisk defendant because they believed a weapon was on the premises of a drug operation. The State also argues that, based on the totality of the circumstances involving defendant's history and location, Danner had enough information supporting probable cause to believe the soft bulge in the pocket was cocaine. Defendant argues that the stop and frisk were improper and that Officer Danner did not have probable cause to search defendant.

■ A trial court's decision to suppress evidence will not be overturned on review unless that decision is clearly erroneous. (*People v. Galvin* (1989), 127 Ill. 2d 153, 162.) Although the defendant has the burden of proof to make a *prima facie* showing that the police obtained the evidence illegally, once the defendant satisfies that burden, the burden of proof shifts to the State to show that the search was legal. (*People v. Simmons* (1991), 210 Ill. App. 3d 692, 696.) Warrantless searches are *per se* unreasonable; thus, when the defendant challenges a warrantless search and has presented evidence that he was doing nothing unusual at the time of the search, the State must demonstrate the legal justification for the search. 210 Ill. App. 3d at 699.

■■ ■ A police officer may make a valid investigatory stop even without probable cause to make an arrest if the officer knows sufficient articulable facts which create a reasonable suspicion that the person has committed or is about to commit a crime. (*People v. Morales* (1991), 221 Ill. App. 3d 13, 17.) For fourth amendment purposes, a valid warrant to search a location for contraband implicitly authorizes the detention of the occupants while the premises are being

searched. (*People v. Edwards* (1991), 144 Ill. 2d 108, 126.) However, a person may not be searched during the execution of the search warrant merely because that person happens to be on the premises. (*Ybarra v. Illinois* (1979), 444 U.S. 85, 90-91, 62 L. Ed. 2d 238, 245, 100 S. Ct. 338, 341-42; *Simmons*, 210 Ill. App. 3d at 699.) The State must show an independent probable cause or show a sufficient connection between the premises and the person searched. (*People v. Gutierrez* (1985), 109 Ill. 2d 59, 62.) Moreover, the inference that a person talking to a narcotics dealer at a trafficking location is engaging in criminal traffic of narcotics is not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security. (*People v. Harper* (1992), 237 Ill. App. 3d 202, 206, citing *Sibron v. New York* (1968), 392 U.S. 40, 62, 20 L. Ed. 2d 917, 934, 88 S. Ct. 1889, 1902.) The police had no information connecting defendant with Hughes or his residence; they saw defendant commit no crime; and he was doing nothing threatening. Nevertheless, the trial court upheld the validity of the stop and frisk. Thus, the court put more weight on the officers' testimony that defendant was acting suspiciously. While there are few facts to support the conclusion, it is not against the manifest weight of the evidence.

■ Defendant also argues that even if the police could stop a suspect, the right to frisk that person does not automatically follow the right to stop. (*Galvin*, 127 Ill. 2d at 165.) An officer may frisk the person only if the officer has reason to believe that he is dealing with an armed and dangerous individual and that the safety of the officer or others is in danger. (*Morales*, 221 Ill. App. 3d at 17.) The sole justification of the frisk is to protect the officer or others nearby but not to gather evidence. *Galvin*, 127 Ill. 2d at 170; *Morales*, 221 Ill. App. 3d at 17-18.

■ The trial court found that the State was justified in making a protective frisk but that the officer failed to articulate a basis for believing defendant had a weapon. This finding is not manifestly erroneous. Although Brictson said he brought a firearms officer with him, he never specified what source of information led him to believe a weapon was present in the apartment. Moreover, defendant was not named in the search warrant, made no furtive gestures, and showed no indicia of having a concealed weapon. (*Cf. Morales*, 221 Ill. App. 3d at 18 (large object made a visible bulge in suspect's clothing).) The State argues, citing *People v. Pantoja* (1989), 184 Ill. App. 3d 671, that an officer may consider a suspect's dangerous history, but in *Pantoja* we held that no facts corroborated the belief that the defendant there was armed at the time of the stop (184 Ill. App. 3d at 675;

see also *People v. Condon* (1992), 148 Ill. 2d 96, 104 (record did not indicate any threatening behavior)). Similarly, here there was no evidence that defendant was armed at the time he was ordered to put his hands on the wall. See *Harper*, 237 Ill. App. 3d at 207.

Moreover, because the bulge in defendant's pocket was small and soft and did not seem to be a weapon, Danner could not further search defendant to satisfy the officer's curiosity. (*People v. Goodey* (1991), 223 Ill. App. 3d 393, 396; *People v. Ricksy* (1990), 206 Ill. App. 3d 302, 309-10.) During an investigatory stop, the officer may not remove an item that does not feel like a weapon. *Morales*, 221 Ill. App. 3d at 18; *cf. People v. Day* (1990), 202 Ill. App. 3d 536, 545 (where officer felt something under the suspect's clothing that had a straight edge like a razor, the officer was justified in pulling out the item, which happened to be an envelope containing drugs).

■ The State next argues that the trial court erred in determining the officer did not possess probable cause to justify a search of the pocket. Even when the officer knows the item hidden under the clothing is not a weapon, the inquiry into the reasonableness of his further search is not final.

> " 'Assuming the object discovered in the pat-down does not feel like a weapon, this only means that a further search may not be justified under a *Terry* analysis. There remains the possibility that the feel of the object, together with other suspicious circumstances, will amount to probable cause that the object is contraband or some other item subject to seizure, in which case there may be a further search based upon that probable cause.' " (*Morales*, 221 Ill. App. 3d at 18, quoting 3 W. LaFave, Search & Seizure §9.4(c), at 524 (2d ed. 1987).)

An officer's entry into an individual's pocket may be justified if the experienced officer's tactile perception, coupled with other circumstances, is sufficient to establish probable cause to arrest that individual for possession of narcotics *before* entry into the pocket. (*Morales*, 221 Ill. App. 3d at 19.) Before the trial court, the prosecutor argued that an officer need not ignore an item, immediately apparent as contraband, found during a protective search merely because the item is not a weapon and cited *Michigan v. Long* (1983), 463 U.S. 1032, 1050, 77 L. Ed. 2d 1201, 1220, 103 S. Ct. 3469, 3481. See also *Texas v. Brown* (1983), 460 U.S. 730, 742-43, 75 L. Ed. 2d 502, 514, 103 S. Ct. 1535, 1543-44; *People v. House* (1986), 141 Ill. App. 3d 298, 300-01.

■ An officer has probable cause to make an arrest when the totality of circumstances would permit a reasonably prudent person to

believe that the suspect is committing a crime. (*People v. Montgomery* (1986), 112 Ill. 2d 517, 525.) A seizure, for fourth amendment purposes, is synonymous with an arrest. (*People v. Melock* (1992), 149 Ill. 2d 423, 436.) The State argues that Danner had probable cause to believe the bulge in defendant's pocket contained cocaine, citing *Morales*. In *Morales*, during a justifiable stop and frisk the officer could discern that the large and visible bulge was too soft to be a weapon. However, the feel of the bag and the crackling sound made when he pressed it led the officer to conclude the bag contained a leafy substance. Just before the stop and frisk, the officer saw Morales surreptitiously exchange something with another man and then walk away when the police approached. The feel of the bag during the protective search provided the additional evidence necessary to pass the probable cause threshold to believe the bag contained marijuana, given the totality of the circumstances. *Morales*, 221 Ill. App. 3d at 15-17; *cf.* *People v. Jones* (1991), 214 Ill. App. 3d 256, 259; *People v. Kolody* (1990), 200 Ill. App. 3d 130, 135; *People v. Clark* (1989), 185 Ill. App. 3d 231, 238 (it is not enough for an experienced officer to see the type of envelope commonly used to contain contraband or even a hand-rolled cigarette; probable cause to believe the item contains contraband arises only when there are other suspicious and distinctive circumstances such as furtive movements); see also *People v. Tate* (1967), 38 Ill. 2d 184, 187; *People v. Symmonds* (1974), 18 Ill. App. 3d 587, 595-98.

■ A trial court's ruling on a motion to suppress will not be reversed unless the ruling is manifestly erroneous. (*People v. Henderson* (1990), 142 Ill. 2d 258, 293.) We do not believe the trial court erred when it found insufficient evidence to support a warrantless search of defendant's pocket. Unlike *Morales*, the officers did not see defendant exchange anything with Hughes, the subject named in the search warrant. While a person may be detained during the execution of a search warrant (*Edwards*, 144 Ill. 2d at 126), he may not be searched merely because he happens to be present on the premises (*Ybarra v. Illinois* (1979), 444 U.S. 85, 90-91, 62 L. Ed. 2d 238, 245, 100 S. Ct. 338, 341-42; *Simmons*, 210 Ill. App. 3d at 699). The probable cause requirement cannot be undercut or avoided by the simple pointing to the fact that coincidentally there exists probable cause to search the premises where the suspect is found. (210 Ill. App. 3d at 700.) Defendant was doing nothing unusual when the police entered the apartment.

Assuming the police had a right to frisk defendant, at most Danner had a suspicion or a hunch that the soft bulge was caused by a

bag of cocaine. This tactile sensation of a packed powder, even with the other circumstances, did not give Danner probable cause to arrest defendant and further search him to ascertain the substance's visual appearance, which might have revealed additional clues of the substance's chemical nature. Danner could not explain how the bulge felt different from any legitimate contents of pockets. A powder alone is not illegal. There must be some other distinctive evidence to demonstrate its illegality. The trial court did not believe that Danner could discern the tactile composition of cocaine, if it is distinctive, from his feeling of the packed powder through denim. (See *State v. Dickerson* (Minn. 1992), 481 N.W.2d 840, 846, *cert. granted* (1992), ___ U.S. ___, 121 L. Ed. 2d 22, 113 S. Ct. 53 (no "plain feel" exception to the fourth amendment).) The trial court operates as the determiner of the credibility of the witnesses and the weight to be given their testimony. (*Galvin*, 127 Ill. 2d at 163.) The trial court's determination is not manifestly erroneous, and we affirm.

For the above reasons, the order of the circuit court of Kane County is affirmed.

Affirmed.

INGLIS, P.J., and BOWMAN, J., concur.