2022 IL App (1st) 210330-U

FIFTH DIVISION
JUNE 17, 2022

No. 1-21-0330

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 9843 |
| | ) | |
| SANTIAGO VILLA, | ) | Honorable |
| | ) | Dennis J. Porter, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Justices Hoffman and Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in denying the defendant's motion to quash arrest and suppress evidence.

¶ 2    Following a bench trial in the circuit court of Cook County, the defendant-appellant, Santiago Villa, was convicted of aggravated unlawful use of a weapon and was sentenced to three years' imprisonment. The defendant now appeals. He argues that the trial court erred in denying his motion to quash arrest and suppress evidence, and consequently, his conviction cannot stand. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 3                                     BACKGROUND

¶ 4      The State charged the defendant with 12 firearm-related criminal counts, including aggravated unlawful use of a weapon (AUUW). The charges arose out of an incident on June 11, 2017. Prior to proceeding to a bench trial, the defendant filed a motion to quash arrest and suppress evidence. The motion argued that the defendant was unlawfully seized without reasonable suspicion or probable cause. A hearing on the motion was held.

¶ 5      At the hearing, Officer Kerry Pozulp testified that on June 11, 2017, at approximately 5:50 p.m., he was on patrol with his partner, Officer Colon, in an unmarked vehicle. They were driving in the area of 2243 West 50th Place in Chicago. He and Officer Colon were patrolling that "high crime" area because there had been multiple shootings recently. Specifically, two of the shootings had occurred in the neighborhood on that same day, albeit at different times.

¶ 6      Officer Pozulp testified that when they were near 2243 West 50th Place at approximately 5:50 p.m., from about 100 feet away, they saw the defendant standing with another man near a park entrance. Officer Pozulp did not know anything about the defendant and did not have any information that the defendant had personally been involved in the earlier shootings.

¶ 7      Officer Colon, who was driving the unmarked vehicle, approached the defendant. Officer Pozulp testified that they decided to approach the defendant because "as [they] turned down the street *** [the defendant] turned and looked at us and he immediately turned away." As the defendant turned away, Officer Pozulp "saw the brown butt of a handgun, half the handgun hanging out of [the defendant's] right pants pocket." Officer Pozulp testified: "In my experience, I know what the butts of revolvers look like, butts of handguns, all sorts of handguns. This, I could clearly see, was the butt of a handgun." When asked how much of the butt of the gun he could see,

Officer Pozulp responded, "[t]he whole thing." He explained that the gun was "hanging out" of the defendant's right front pants pocket. Officer Pozulp then saw the defendant turn away and "grab[] the butt of the gun." It looked like the defendant "was trying to conceal the firearm by putting his shirt over it."

¶ 8 Officer Pozulp then told Officer Colon to stop the vehicle because the defendant was armed. He exited the vehicle and announced himself to the defendant, telling him not to move and to put his hands up. The defendant "stopped and listened to [his] commands." As Officer Pozulp approached the defendant on foot, he could still "clearly" see the butt of the gun in the defendant's pants pocket. The defendant stood there with his hands up, and Officer Pozulp "immediately recovered the firearm" from the defendant's right front pants pocket and he then "asked [the defendant] if this was his gun." Officer Colon placed the defendant in handcuffs at that time, "for safety." Within two minutes, the police officers determined that the gun was loaded and that the defendant did not have a firearm owner identification card or a concealed carry license. The defendant was then arrested and charged in relation to his possession of the gun.

¶ 9 At the conclusion of the hearing, defense counsel argued that the defendant was merely "standing on a public sidewalk not doing anything illegal" when the police officers approached him. She asserted:

> "[The defendant] submitted to their commands. He was cooperative. They had no reason to come up and say let me take that handgun off of you. He wasn't doing anything patently unlawful to their knowledge at the time prior to approaching. They did not have a warrant. They did not have probable cause to believe that he was committing a crime."

Accordingly, defense counsel claimed that the gun was illegally seized from the defendant and

asked the trial court to grant the motion to quash arrest and suppress evidence.

¶ 10    The State argued that the gun "was clearly not concealed upon the person of the defendant," and that the police officers had probable cause that the defendant was committing a crime when they could see the gun sticking out of his pants pocket. The State averred that, "[e]ven if this defendant has a concealed carry license, you can't carry a weapon in that fashion. So the officer had every right to walk up to this defendant and recover that weapon."

¶ 11    Following arguments, the trial court denied the defendant's motion to quash arrest and suppress evidence. In so ruling, the trial court stated that for its findings of fact, it found Officer Pozulp's testimony to be credible. The trial court stated:

> "Once the officer sees the defendant with a gun sticking out of his pocket -- we don't have open carry in Illinois -- that is a crime. So he is entitled to arrest him for that.
>
> Not only that, alternatively, he would have the right to make a *Terry* stop and ascertain if the defendant did have proper licenses to be carrying a gun to begin with. And that's all he did. So [the] motion is denied."

¶ 12    After the hearing, the defendant requested to proceed *pro se*. After admonishing the defendant pursuant to Illinois Supreme Court Rule 401 (eff. July 1, 1984), the trial court granted his request.

¶ 13    The defendant then filed a motion to reconsider the denial of his motion to quash arrest and suppress evidence. His motion argued that Officer Pozulp did not have probable cause to "unlawfully arrest[] [him] and remove[] a firearm." Specifically, the defendant claimed that the police officers could not have known whether he was committing a crime or not since they could not determine whether he carried a concealed carry license simply by looking at him.

¶ 14    The trial court denied the defendant's motion to reconsider. The trial court explained: "[W]e don't have open carry in this state and when [the police officers] observed the gun they could see part of it, that's open carry, so *** at the minimum they would have the right to stop and question the defendant ***."

¶ 15    The defendant requested a stipulated bench trial so that he could preserve the issue of the motion to quash arrest and suppress evidence for appeal. The trial court admonished the defendant:

> "If you have a stipulated bench trial that would be a situation where you would agree that the state has evidence which would sustain their burden, in other words you would agree to what the evidence would be if they introduced it and you would be agreeing that that would be sufficient to prove their case. If you do that, you can still appeal the motion.
>
> ***
>
> You are pleading not guilty, this isn't a real trial, [but] you are going to be found guilty by doing a stipulated bench trial, do you understand that?"

The defendant, still representing himself, stated that he understood and the stipulated bench trial commenced. The parties stipulated to Officer Pozulp's testimony from the motion hearing, that a loaded gun was recovered from the defendant on June 11, 2017, and that the defendant did not have a concealed carry license.

¶ 16    The trial court found the defendant guilty of all counts, merging them into one count of AUUW. The defendant represented himself during the sentencing hearing, and the trial court sentenced him to three years' imprisonment. This appeal followed.

¶ 17                                    ANALYSIS

¶ 18    We note that we have jurisdiction to consider this matter, as the defendant filed a motion

to file a late notice of appeal, which this court granted. Ill. S. Ct. R. 606(c) (eff. July 1, 2017).

¶ 19    The defendant presents the following issue for our review: whether the trial court erred in denying his motion to quash arrest and suppress evidence. He argues that the police officers did not have probable cause to arrest him and seize his gun. Specifically, the defendant claims that the only information the police had, prior to arresting him, was the butt of the gun in his pocket that they could see; but they did not know whether he had a concealed carry license. According to the defendant, the mere sight of part of his gun did not warrant probable cause for the police officers to arrest him. He further asserts that they did not see him engaging in criminal activity and had no reason to suspect that he was involved in the earlier shootings in the area. The defendant emphasizes that the police officers did not conduct a *Terry* stop[1], as his detention was an "arrest." Nevertheless, he also argues that the police lacked reasonable suspicion to conduct a *Terry* stop. The defendant asks us to reverse the trial court's judgment denying his motion to quash arrest and suppress evidence, and reverse his conviction outright, on the basis that his conviction cannot stand without the gun as evidence.

¶ 20    As an initial matter, we address the State's argument that the defendant forfeited this issue. The State avers that the defendant failed to file a posttrial motion and therefore, cannot raise an argument regarding the motion to quash arrest and suppress evidence for the first time on appeal. The State claims that we can only review this matter under the plain error doctrine. However, the defendant proceeded with a stipulated bench trial, which is a "procedure designed to preserve the very issue" that the defendant now raises and obviates the need for a posttrial motion. *People v. Cordero*, 358 Ill. App. 3d 121, 124 (2005) (citing *People v. Todd*, 249 Ill. App .3d 835, 840–41

---

[1]A *Terry* stop occurs when a police officer briefly detains an individual to investigate the possibility of criminal behavior, absent probable cause to arrest. *People v. Maxey*, 2011 IL App (1st) 100011, ¶ 60.

(1993)). Thus, we reject the State's argument and will consider the issue the defendant now presents on appeal.

¶ 21    Turning to the merits of the issue before us, in reviewing a trial court's ruling on a motion to quash arrest and suppress evidence, this court applies a two-part standard of review. *People v. Dailey*, 2018 IL App (1st) 152882, ¶ 16. "We accord great deference to the trial court's factual findings and will reverse them only if they are against the manifest weight of the evidence; however, we review the trial court's ultimate ruling on the motion *de novo*." *Id.*

¶ 22    The defendant's motion to quash arrest and suppress evidence was based on his argument that the police officers lacked probable cause to arrest him and seize his gun. The United States and Illinois constitutions prohibit unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I sec. 6. In considering these constitutional protections, courts have divided police-citizen encounters into three tiers: (1) arrests, which must be supported by probable cause; (2) brief investigative detentions, or *Terry* stops, which must be supported by a reasonable, articulable suspicion of criminal activity; and (3) encounters that involve no coercion or detention and, thus, do not implicate fourth amendment interests. *People v. Edwards*, 2020 IL App (1st) 182245, ¶ 21. The parties agree that the police officers here *arrested* the defendant, so the question is whether they had *probable cause* to do so. "An officer has probable cause to make an arrest when the totality of circumstances would permit a reasonably prudent person to believe that the suspect is committing a crime." *People v. Duffie*, 2021 IL App (1st) 171620, ¶ 46.

¶ 23    The defendant makes much of the fact that the police officers did not know whether he held a concealed carry license *prior* to seizing his gun and placing him in handcuffs and argues that he could have been carrying the gun legally, and so there was no probable cause to arrest him. It is true that "the mere possession of a gun outside of the home no longer necessarily amounts to

criminal conduct, and thus it no longer automatically provides probable cause for an arrest (or a search) in every instance." *People v. Jenkins*, 2021 IL App (1st) 200458, ¶ 42. However, the record reflects that it was not *only* that the defendant had *possession* of a gun that caused the police officers to arrest him. Importantly, Officer Pozulp testified that he and his partner were patrolling *a high crime area where two shootings had just occurred* when they saw the defendant standing *with a gun "hanging out" of his pants pocket*. And when the defendant saw the police officers, he attempted to turn away from them and cover up the gun, *as if he was trying to hide the gun from the police officers' view*. Those furtive movements were significant. See *id.* ¶¶ 43-44 (the police officer "did not just walk by a nonchalant individual, tending to his own business, as if there was nothing for him to worry about, and then arrest him for having a gun, say, tucked into his waistband. It is a reasonable inference that defendant immediately and deliberately took measures to hide the gun from the officers' view when he noticed the police converging on that block.").

¶ 24     Indeed, "when the furtive gestures are coupled with other circumstances tending to show probable cause (such as open contraband or suspicious objects in plain view, or prior reliable information) *** the suspicious movement [is] included in the basis for finding probable cause for a search." *People v. Trisby*, 2013 IL App (1st) 112552, ¶ 16. The entire butt of the defendant's gun was in plain view and as the trial court noted, there are no "open carry" gun laws in Illinois. Further, the defendant actively attempted to conceal the gun when he noticed the police officers looking at him. The police officers were in the area for the very reason that there had been a number of recent shootings in the area, presumably by unauthorized people.

¶ 25     While these individual facts may not amount to probable cause on their own, when viewing them *all together* under the totality of the circumstances standard, it is clear that probable cause existed here for the police officers to arrest the defendant and seize his gun. See *People v. Balark*,

2019 IL App (1st) 171626, ¶ 37 (the existence of probable cause depends upon the totality of the circumstances at the time of the arrest). Thus, the trial court did not err in denying the defendant's motion to quash arrest and suppress evidence. We accordingly affirm the trial court's judgment.

¶ 26                                    CONCLUSION

¶ 27    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 28    Affirmed.